**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**ERIN S.,**

      **Plaintiff,**

                        **Civil Action 2:20-cv-6090**
  **v.**                  **Judge Edmund A. Sargus, Jr.**
                        **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Erin S., brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying her applications for

social security disability insurance benefits and supplemental security income.  This matter is

before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's

Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No.

22), and the administrative record (ECF No. 12).  Plaintiff did not file a reply.  For the reasons

that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors

and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff protectively filed her applications for disability insurance benefits and for

supplemental security income in November 2017, alleging that she has been disabled since April

1, 2016, due to fibromyalgia, degenerative disk disease at C3-C6 and L4-L5, cervical kyphosis,

scoliosis, moderate narrowing of the spine, anxiety, ADD and ADHD. (R. at 222-34, 258.)

Plaintiff's applications were denied initially in December 2018 and upon reconsideration in

February 2019. (R. at 72-156.) Plaintiff sought a *de novo* hearing before an administrative law

judge. (R. at 173-74.) Administrative Law Judge Joseph G. Hajjar ("ALJ") held a video hearing

on February 7, 2020, at which Plaintiff, who was represented by counsel, appeared and testified.

(R. at 34-71.) A Vocational Expert ("VE") also appeared and testified. (*Id.*) On March 06,

2020, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the

Social Security Act. (R. at 12-33.) The Appeals Council denied Plaintiff's request for review

and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.)

## II.   HEARING TESTIMONY

The ALJ summarized Plaintiff's relevant hearing testimony:

[Plaintiff] reported that she can no longer work due to back pain. She stated that
some days she is unable to move well. [Plaintiff] further testified that migraines
also prevent[] her from working. She reported that she sees a back specialist every
two weeks, who checks her and prescribes medication. [Plaintiff] contends that she
also treats with ice, heat, and home exercises. [Plaintiff] stated that she has also
received injections in her back, most recently in October 2019. [Plaintiff] alleges
that she had 14 injections in 2019, but they do not provide relief. [Plaintiff] alleges
that she gets migraines one per week that she treats with over-the-counter Advil.
[Plaintiff] reported that she takes medication for ADD and ADHD since 2012. She
stated that these medications help her. She also stated that she also takes medication
for anxiety since 2011, and she has had some improvement. On a typical day,
[Plaintiff] will get up and take her children to school, and then come home and use
a heat pack on her back. [Plaintiff] testified that she has a driver's license and
drives. [Plaintiff] reported that she vacuums, puts dishes away, wipes off the table,
and does the laundry. [Plaintiff] reported that she does no yard work, but goes
grocery shopping once every other week. She stated that she also cooks simple
meals. [Plaintiff] reported that when it is warm, she walks outside for 15 to 20
minutes every other day. [Plaintiff] reported that she has friends who periodically
visit. [Plaintiff] reported that she goes to friends' birthday parties. [Plaintiff]
reported that she can sit for 15 to 20 minutes before her back becomes stiff. She

2

alleged that she can stand for 5 to 10 minutes. [Plaintiff] estimated that she is able to lift five pounds. (Testimony).

(R. at 21-22.)

### III.  MEDICAL RECORDS

The ALJ summarized the relevant medical records concerning Plaintiff's physical

impairments:

Treatment notes indicate that [Plaintiff]'s symptoms are predominately neuropathic. (Exhibit 2F/29). [Plaintiff]'s description of joints are most consistent with neuropathic symptoms/dysesthesias seen in a variety of neuropathic states including Fibromyalgia. (Exhibit 2F/29). [Plaintiff]'s ANA and RF factor were negative when check by a doctor. (Exhibit 2F/16). Prior to the alleged onset date, [Plaintiff] was reported to have diffuse joint pains everywhere in her joints and soft tissue. (Exhibit 2F/25). [Plaintiff] previously used Lyrica, gabapentin, Cymbalta, and Savella to treat. (Exhibit 2F/25). [Plaintiff] was prescribed Topamax, but at a May 2016 follow-up appointment stated that she was unable to tolerate it as it was making her dizzy and too sleepy in the morning. (Exhibit 4F/3). No definable tender points were noted on examination. (Exhibit 4F/4). [Plaintiff] was prescribed Lyrica again. (Exhibit 4F/4). March 2019 records indicate that [Plaintiff] has not treated with a rheumatologist for fibromyalgia since December 2017. (Exhibit 12F/8). However, the record contains no rheumatology treatment records following [Plaintiff]'s May 2016 visit. It is not entirely clear as to whether [Plaintiff]'s alleged fibromyalgia meets the SSR 12-2p criteria to be considered a medically determinable impairment given that no specific tender points were noted. However, under the 2010 ACR Preliminary Diagnostic Criteria, I may find that [Plaintiff]'s Fibromyalgia is a medically determinable impairment if [Plaintiff] has a history of widespread pain; repeated manifestation of six or more fibromyalgia signs or symptoms; and evidence that other disorders were excluded. (SSR 12-2p). Given [Plaintiff]'s anxiety, depression, reported insomnia, migraines, restless leg syndrome (Exhibit 4F/3); and giving [Plaintiff] every reasonable benefit of the doubt, I find [Plaintiff]'s fibromyalgia to be a severe impairment. The limitations included in the residual functional capacity accommodate any symptomology arising from this impairment.

Prior to the alleged onset date, an MRI of the lumbar spine was performed in January 2014, which showed right paracentral disc protrusion at L4-5 measuring 4 mm in diameter, which contacts the right L4 nerve root in the lateral recess. (Exhibit 5F/153). Mild central canal stenosis was also noted. (Exhibit 5F/153).

Records from April 2016, around the alleged onset date, indicate that [Plaintiff] treated for lower back pain, but had no new complaints of pain. (Exhibit 1F/1). The treatment notes also relate that [Plaintiff] was working at this time. (Exhibit 1F/1). On examination, [Plaintiff] had a negative straight leg raise bilaterally, normal gait, motor, sensory and deep tendon reflexes in the lower extremities, and reduced range of motion in the thoracic/lumbar spine. (Exhibit 1F/2).

[Plaintiff] presented to the emergency room for treatment of back pain in October 2016. (Exhibit 3F/174). On examination, [Plaintiff] exhibited decreased range of motion, tenderness, pain, and spasm in the lumbar back. (Exhibit 3F/177). She was also tender at the left SI joint. (Exhibit 3F/177). She was treated with Decadron and Relafen. (Exhibit 3F/178).

The record indicates that [Plaintiff] treats at the Dublin Pain Clinic for a diagnosis of spondylosis without myelopathy or radiculopathy in the cervical region. (Exhibit 5F; 8F; 11F; 14F). [Plaintiff] generally reports pain in her neck, upper back, mid back, and lower back. (Exhibit 5F/2, 8, 13, 22, 34; 8F). She reports that pain does not radiate and treatment notes indicate that no numbness or weakness is present. (Exhibit 5F; 8F). Treatment notes relate that [Plaintiff] has undergone numerous cervical, lumbar, and thoracic medial branch blocks, steroid injections, as well as radiofrequency ablation and sacroiliac joint injections. (Exhibit 5F/4, 20, 45, 78, 101, 118, 128, 132, 141, 145, 149, 162, 166, 174; 8F/3, 17, 24; 14F/15, 18, 26, 31). She also treats with prescription medications; such as Ibuprofen 600 mg, Tizanidine, Norco, Hydrocodone, or Meloxicam. (Exhibit 5F; 8F; 11F; 14F). Physical examination reveals some tenderness, normal gait, no limitation in range of motion, and negative straight leg raise. (Exhibit 5F/9, 14, 23, 35, 44, 73, 87, 108, 122, 155). As of October 2018, [Plaintiff] was exhibiting restricted range of motion in the cervical spine. (Exhibit 8F/10, 13, 20; 14F/38, 42). However, treatment notes from March 2019 forward indicate that [Plaintiff] had no limitation in range of motion of the cervical spine. (Exhibit 11F/9, 18, 24; 14F/6, 11, 22). [Plaintiff] also started to exhibit restricted ranged of motion in the lumbar spine in December 2018. (Exhibit 8F/29, 43; 11F/18; 14F/6, 22, 38, 42). However, she continued to exhibit a normal gait, negative straight leg raise, normal sensation, as well as normal tone and power. (Exhibit 8F/30; 11F/18, 24; 14F/6, 11, 22). Examination also consistently shows that [Plaintiff] is able to ambulate to the examination without an assistive device and sit comfortably on the examination table without difficulty or evidence of pain. (Exhibit 5F; 8F; 11F; 14F).

January 2018 physical examination revealed [Plaintiff] to have intact cranial nerves; 5/5 strength symmetrically throughout; intact sensation to light touch; and normal gait. (Exhibit 3F/295).

4

A cervical spine MRI from March 2019 showed moderate right-sided foraminal narrowing at C4-5 and no evidence of cord signal change. (Exhibit 9F/1). A lumbar spine MRI from March 2019 revealed a central/right paracentral disc protrusion compressing the traversing L5 nerve root, with mild central canal stenosis; and minor spondylosis. (Exhibit 13F/10).

January 2020 treatment notes relate that [Plaintiff] reported new onset of shooting pain down her left leg to the foot. (Exhibit 11F/6). She also had a positive straight leg raise on the left side in the seated position at 90 degrees. (Exhibit 11F/9). Despite the new pain, [Plaintiff] continued to exhibit a normal gait and normal motor function and strength. (Exhibit 11F/9). Sensory examination showed decreased sensation to light touch over the L4-L5 lower extremity dermatones on the left side. (Exhibit 11F/9).

December 2018 and January 2019 treatment notes from the pain clinic relate that claimant denies any decreased quality of life or reduced ability to perform basic daily functions. (Exhibit 8F/28, 35). Additionally, there are multiple references to [Plaintiff] working throughout the record.

(R. at 22-24.)

The ALJ summarized the relevant medical records concerning Plaintiff's mental health impairments:

The record indicates that [Plaintiff] treats with Vyvanse for ADD from her primary care provider. (Exhibit 2F/3). During 2017 and 2018 appointments, [Plaintiff] presented with normal mood and fact, and good insight and judgment. (Exhibit 2F/3, 5, 7). [Plaintiff] started treating with Providers for Healthy Living in September 2018. (Exhibit 7F/30). She reported that her primary care doctor is no longer prescribing her [Vyvanse]. (Exhibit 7F/30). She reported that she has trouble

5

following through and completing work assignments, and getting organized. (Exhibit 7F/30). [Plaintiff] exhibited good eye contact, cooperative behavior, logical thought process and age –appropriate thought content, fair attention span/concentration, and fair insight/judgment. (Exhibit 7F/5, 7, 10, 17, 24, 31; 15F/16, 19, 23, 25). [Plaintiff] was diagnosed with generalized anxiety disorder and ADHD combined type based on testing. (Exhibit 7F/25, 34). Testing also revealed that [Plaintiff]'s depression scale was within normal range and she had no significant mood instability. (Exhibit 7F/33). [Plaintiff] was prescribed Lexapro and reported that she notice[s] some difference, in that, she has been going to bed earlier and has not been worrying as much. (Exhibit 7F/23). [Plaintiff] further reported that she has been getting more done in the morning since starting Vyvanse. (Exhibit 7F/16). [Plaintiff]'s Vyvanse was increased in December 2018 as [Plaintiff] reported a decline in her focus in the afternoon. (Exhibit 7F/9, 11). In January 2019, [Plaintiff] reported that the increase in medication has been helpful and that her anxiety has been okay. (Exhibit 7F/4). [Plaintiff]'s Vyvanse was increased again in December 2019, which [Plaintiff] reported was helpful. (Exhibit 15F/8). She further reported that her hobbies have been enjoyable recently. (Exhibit 15F/8).

A psychological consultative evaluation was performed by James Tanley, Ph.D. on November 6, 2018. (Exhibit 6F). [Plaintiff] reported that she is unable to focus and cannot complete one task. She also reported limited sleep due to pain. As for daily activities, [Plaintiff] reported that she takes her children to school, does laundry, dishes, cleans the bathroom, grocery shops, and watches television. [Plaintiff] was generally cooperative during the examination. Her affect was bland, but eye contact was good. [Plaintiff]'s recent and remote memory were described as spotty. She remember[ed] 5 digits forward and 5 backwards. She remembered 1 out of 3 items after a 5-minute delay. She committed one error on Serial 3 addition. [Plaintiff] was diagnosed with Unspecified Depressive Disorder, Moderate; Unspecified Anxiety Disorder; and ADHD, Inattentive Presentation, Mild.

(R. at 24-25.)

## IV.   ADMINISTRATIVE DECISION

On March 6, 2020, the ALJ issued his decision.  (R. at 12-33.)  The ALJ found that

Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2020.

(R. at 17.)  At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not

engaged in substantially gainful activity since April 1, 2016, the alleged onset date.  (*Id.*)  The

ALJ found that Plaintiff had the following severe impairments:  spine disorders, fibromyalgia,

obesity, depressive disorder, ADHD, and anxiety disorder.  (R. at 18.)  The ALJ further found

that Plaintiff did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(*Id.*)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity

("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] find[s] that the [Plaintiff]
> has the residual functional capacity to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) except [Plaintiff] can climb ramps and stairs
> frequently, never climb ladders, ropes, or scaffolds, stoop occasionally, kneel
> frequently, crouch frequently, crawl occasionally. [Plaintiff] can never work at

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> unprotected heights or near dangerous moving machinery. [Plaintiff] can perform simple tasks with no strict production rate pace requirement and tolerate occasional routine workplace changes.

(R. at 21.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform any past relevant work.  (R. at 26.)  Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (R. at 27-28.)   He therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since April 1, 2016, the alleged onset date.  (R. at 28.)

## V.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a [Plaintiff] on the merits or deprives [Plaintiff] of a substantial

right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746

(6th Cir. 2007)).

## VI.    ANALYSIS

Plaintiff sets forth two contentions of error: (1) the ALJ did not properly evaluate her

impairments under Listing 1.04 and, therefore, his decision is not supported by substantial

evidence; and (2) the ALJ's RFC determination is not supported by substantial evidence.  With

respect to the RFC formulation, Plaintiff argues that she does not have the ability to perform

light work on a sustained basis because she cannot stand and work for 6 hours out of an 8-hour

workday.  Further, Plaintiff asserts that the ALJ did not adequately account for her limitations in

concentration, persistence, or pace.  (ECF No. 17).  The Undersigned disagrees and concludes

that the ALJ's conclusions are supported by substantial evidence.

### A.  Listing 1.04

A plaintiff's impairment must meet every element of a Listing before the Commissioner

may conclude that he or she is disabled at step three of the sequential evaluation process. *See* 20

C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir.

1986). The plaintiff has the burden to prove that all of the elements are satisfied. *King v. Sec'y of*

*Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984). The regulations provide that in

making a medical equivalence determination, the Social Security Administration will "consider

the opinion given by one or more medical or psychological consultants designated by the

Commissioner." 20 C.F.R. § 404.1526(c). Nevertheless, "[t]he burden of providing a. . . record. .

. complete and detailed enough to enable the Secretary to make a disability determination rests

with the [plaintiff]." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 363, 367 (6th Cir.

1989) (Commissioner's decision denying benefits affirmed where medical evidence "almost

establishes a disability" under Listing).

      The starting point for the Court's analysis is Listing 1.04, as in effect at the time of the

ALJ's decision, which provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis,
> spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis,
> vertebral fracture), *resulting in compromise of a nerve root* (including the
> cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by
> > neuroanatomic distribution of pain, limitation of motion of the
> > spine, motor loss (atrophy with associated muscle weakness or
> > muscle weakness) accompanied by sensory or reflex loss and,
> > if there is involvement of the lower back, positive straight-leg
> > raising test (sitting and supine).
>
> OR
>
> > B. Spinal arachnoiditis, confirmed by an operative note or
> > pathology report of tissue biopsy, or by appropriate medically
> > acceptable imaging, manifested by severe burning or painful

        dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

OR

    C.   Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

      The ALJ found that Plaintiff's back impairment failed to meet Listing 1.04, Disorders of the Spine, and provided this rationale:

     I have specifically considered 1.04 (Disorders of the Spine). Section 1.04 requires evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation. [Plaintiff] was repeatedly noted on examination to have a normal gait. (Exhibits 4F/4; 5F; 14F/6) [R. at 789, 806-991, 1183]. As there is no evidence of nerve root compression, spinal stenosis or arachnoiditis with accompanying ineffective ambulation, claimant's spinal impairment is not at listing level severity.

(R. at 18.)

      Plaintiff contends that the ALJ erred in concluding that her impairments did not meet Listing 1.04A.   In order to demonstrate that she met Listing 1.04A, Plaintiff was required to establish each of the following seven criteria:

    (1)   A disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),

    (2)   resulting compromise of a nerve root (including the cauda equina) or the spinal cord,

    (3)   evidence of nerve root compression characterized by neuro-anatomic distribution of pain,

11

(4)     limitation of motion of the spine,

(5)     motor loss (atrophy with associated muscle weakness or muscle weakness [*sic*] ) accompanied by sensory or reflex loss,

(6)     if there is involvement of the lower back, positive straight-leg raising test (sitting and supine), and

(7)      the impairment has lasted or can be expected to last for a continuous period of at least 12 months.

According to Plaintiff, the medical evidence demonstrates nerve root compression characterized by neuro-anatomic distribution of pain and limitation of motion of the spine. (ECF No. 17 at 7.)  Plaintiff cites to a string of evidence which she contends demonstrates the various other criteria relevant to Listing 1.04A identified above. (*Id.* citing R. at 321; 324; 328-329; 332; 333; 335; 337; 344-345; 349; 351; 357-358; 360, 1077.)  A review of this evidence, however, reveals that it does not support Plaintiff's contention.

 Certainly, there is some evidence of nerve root compression (R. at 957; 1165), limited range of motion (R. at 321-322; 329; 342; 370) and at least one instance of a positive straight leg raising test.  (R. at 345.)   However, there is no evidence of all relevant criteria and, as the Commissioner highlights, the bulk of the record documents normal range of motion, full strength, normal sensation, normal reflexes and negative straight leg raise tests.  (*See, e.g.,* R. at 323-324; 690; 788; 819; 828; 840; 845; 849; 855; 860; 865; 878; 892; 902; 913; 927; 941; 1042; 1045; 1052; 1062; 1129; 1138; 1144; 1154; 1183; 1188; 1199.)  Plaintiff, in relying primarily on neuro-anatomic distribution of pain and limitation of motion of the spine, does not seriously contend otherwise.

12

Instead, Plaintiff argues that she has "met the second requirement of Listing 1.04" because there is "documentation of an inability to perform fine and gross movements effectively[2] and/or ambulate effectively…." (ECF No. 17 at 7.)  As the criteria set forth above demonstrate, this alleged inability is not relevant to Listing 1.04A.  Moreover, to the extent, Plaintiff may be suggesting that she has met the criteria for Listing 1.04C, the Undersigned disagrees.

First, Listing 1.04C requires "lumbar spinal stenosis resulting in pseudoclaudication …."  There is no evidence of this in the record.  Further, the inability to ambulate effectively is "'an extreme limitation of the ability to walk.'" *Searer v. Comm'r of Soc. Sec.*, No. 3:18 CV 1035, 2019 WL 4126380, at *2 (N.D. Ohio Aug. 30, 2019) (quoting 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.00B2b(1)).  "To be able to ambulate effectively, an individual must be able to 'sustain[ ] a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living' and must be able to travel to and from work or school without assistance." *Id.* (quoting § 1.00B2b(2)).  "Section 1.00B2b(2) sets forth a non-exhaustive list of examples of ineffective ambulation that includes "'the inability to walk a block at a reasonable pace on rough

---

[2] To the extent Plaintiff views "an inability to perform fine and gross movements effectively" to be relevant for purposes of considering whether she has satisfied the criteria for Listing 1.04, she makes no argument addressed to this criterion.  Instead, her argument is directed to demonstrating that she has difficulty with sustained ambulation.  Accordingly, the Undersigned has limited the discussion here to the matter of sustained ambulation and considers Plaintiff to have waived any error relating to any alleged inability to perform fine and gross movements. "'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.'" *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n,* 59 F.3d 284, 293–94 (1st Cir. 1995) (citation omitted)).

or uneven surfaces.'" *Id.*  Additional examples "include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id.*  "'The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.'" *Anderson v. Saul*, No. 1:18-CV-2668-TMP, 2020 WL 1318805, at *4 (W.D. Tenn. Mar. 20, 2020) (quoting *Id.*).

With respect to the issue of ambulation, Plaintiff relies on many of the same record cites, but this time for the proposition that "[t]he record consistently documents [her] difficulty with sustained ambulation due to low back pain; numbness; and tingling." (ECF No. 17 at 8.)  Again, however, the Undersigned's review of the record evidence, including the evidence specifically highlighted by Plaintiff, demonstrates that Plaintiff's argument mischaracterizes the record. Indeed, treatment records document Plaintiff's ability to ambulate well without assistance and with a normal gait.  (*See, e.g.,* R. at 321; 323; 329; 332; 342; 345; 348; 360; 362; 381; 788; 791; 794; 814; 819; 828; 840; 845; 849; 855; 860; 865; 878; 892; 902; 913; 927; 960; 986; 995; 1003; 1005; 1015; 1022; 1042; 1045; 1052; 1061; 1072; 1129; 1138; 1144; 1154; 1183; 1188; 1199; 1215; 1219; 1243.)

To be sure, as set forth above, the ALJ's discussion of Listing 1.04 at Step Three is quite cursory.  However, when read in its entirety, the ALJ's non-disability determination demonstrates that substantial evidence supports his Listing 1.04 conclusion. The ALJ discussed

the relevant medical evidence of record at some length elsewhere in his decision.  For example,

the ALJ acknowledged Plaintiff's treatment at the Dublin Pain Clinic for a diagnosis of

spondylosis without myelopathy or radiculopathy in the cervical region.  (R. at 23.)  The ALJ

also recognized Plaintiff 's reports of pain in her neck and back and the various treatments she

had undergone.  (*Id.*)  The ALJ also noted lumbar spine MRI results revealing a central/right

paracentral disc protrusion compressing the traversing the L5 nerve root and one instance where

treatment notes indicated a positive straight leg raise on the left side in a seated position at 90

degrees. (*Id.* at 24.)  At the same time, however, as noted the ALJ cited numerous reports of

Plaintiff's normal gait and normal motor function and strength.  (*Id.*)  Plaintiff does not dispute

the ALJ's recitation of this medical evidence.  Accordingly, Plaintiff failed to meet her burden of

establishing that she met the criteria for any relevant subsection of Listing 1.04.  *See Lett v.*

*Colvin*, No. 1:13 CV 2517, 2015 WL 853425, at *17 (N.D. Ohio Feb. 26, 2015) (finding that

plaintiff did not meet her burden where she failed to establish more recent evidence that she met

the criteria for Listing 1.04A).

Plaintiff further asserts that the ALJ's analysis is inadequate and cites *Reynolds* for the

proposition that when performing a Listing analysis, an ALJ must "actually evaluate the

evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to

facilitate meaningful judicial review." 424 Fed. App'x at 416.  In *Reynolds*, the ALJ found that

the claimant had severe mental and physical impairments at Step Two, but at Step Three, the

ALJ analyzed only whether the claimant's mental impairments met or equaled a Listing, and

completely failed to assess whether the claimant's physical impairments met or equaled any

Listings. *Id.* at 415–16. The Sixth Circuit Court of Appeals found that remand was appropriate because the ALJ "completely skipped an entire step of the necessary analysis." *Id.* In this case, by contrast, the ALJ did not completely fail to consider whether Plaintiff's physical impairments met any listed impairments. Here, the ALJ explicitly considered Listing 1.04. And although his analysis may have been brief, when combined with his discussion of the record evidence related to Plaintiff's spinal impairments, it provides sufficient articulation for adequate judicial review. Moreover, on several occasions, the Sixth Circuit has upheld an ALJ's sparse step three determination when an ALJ made "sufficient factual findings elsewhere in his decision to support his conclusion at Step Three." *Forrest v. Comm'r of Soc. Sec.*, 591 Fed. App'x 359, 366 (6th Cir. 2014) (*citing See Bledsoe v. Barnhart*, 165 Fed. App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a Step Three medical equivalency determination, and finding no need to require the ALJ to "spell out every fact a second time")). Such is the case here. Accordingly, the Undersigned finds that the ALJ did not err when analyzing whether Plaintiff met the criteria for Listing 1.04.

In any event, as discussed above, Plaintiff did not point to evidence of all requirements for Listing 1.04A. Therefore, Plaintiff cannot satisfy her burden of demonstrating that she meets the criteria for Listing 1.04A. Thus, even if the ALJ had erred when analyzing Listing 1.04, any such error would have been harmless. For these reasons, the Undersigned concludes that Plaintiff's allegation of error lacks merit.

## B.  RFC determination

Plaintiff also asserts that the ALJ's RFC is not an accurate representation of her

maximum remaining ability to perform basic work activities.  As noted above, Plaintiff argues

that, contrary to the ALJ's conclusion that she can perform light work, she lacks the ability to

stand and work for 6 hours out of an 8-hour workday.  Further Plaintiff contends that the RFC

fails to account for her limitations in concentration, persistence, or pace.  (ECF No. 17 at 9-14).

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her]

limitations." 20 C.F.R. § 404.1545(a)(1).  A claimant's RFC assessment must be based on

all the relevant evidence in the case file.  (*Id*.)  The governing regulations describe five

different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other

medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical

findings. 20 C.F.R. § 404.1513(a)(1)-(5).  With regard to two of these categories—medical

opinions and prior administrative findings—an ALJ is not required to "defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. §

404.1520c(a).

Instead, an ALJ must use the following factors when considering medical opinions or

administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with

[Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical

source has familiarity with the other evidence in the claim or an understanding of [the SSA's]

disability program s policies and evidentiary requirements." § 404.1520c(c)(1)–(5).  Although

there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. § 404.1520c(b)(2).  Although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so.  (*Id.*)  If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . . " § 404.1520c(b)(3).

### 1.  Plaintiff's Ability to Stand and Work for Six Hours

Turning first to the issue of Plaintiff's ability to stand and work for six hours, Plaintiff contends that the ALJ failed to consider evidence of her chronic pain, fibromyalgia, and degenerative disc disease, as well as her own testimony that she could only stand for five to ten minutes at a time.  Plaintiff's argument again completely mischaracterizes the ALJ's decision. As discussed above, the ALJ considered the medical and nonmedical evidence at length.  (R. at 22-25.)  In doing so, the ALJ discussed Plaintiff's various treatments for back pain and noted instances of limited range of motion and afforded Plaintiff "every reasonable benefit of the doubt" as to her claim of fibromyalgia despite the lack of rheumatology treatment records after May 2016."  (R. at 22.)  However, against this record evidence, the ALJ reasonably weighed references throughout the record to Plaintiff's working, Plaintiff's denial that she experienced a decreased quality of life or reduced ability to perform basic daily functions, and Plaintiff's continued exhibition of a normal gait and normal motor function and strength.  (*See, e.g.,* R. at 24 citing R. at 1060; 1129; R. at 26 citing R. at 8-7; 813; 818; 827; 834; 839; 844; 859; 1014; 1060; 1067; and 1073.)

Moreover, the ALJ reasonably relied on the medical source opinions offered by the state agency reviewing physicians as to Plaintiff's physical limitations.  The ALJ considered these medical source opinions as follows:

> As for the opinion evidence, I have considered the determination of the non-examining medical consultants, Dr. Jasti and Dr. Amiri with the Disability Determination Service. (Exhibit 2A; 6A). Dr. Jasti and Dr. Amiri opined that [Plaintiff] could lift/carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours total and sit for 6 hours total in an 8-hour limited workday. They also opined that [Plaintiff] should avoid all exposure to hazards. Dr. Jasti opined that [Plaintiff] could occasionally crawl, crouch, kneel, stoop, and occasionally climb ramps and stairs; never climbing of ladders, ropes, and scaffolds. On reconsideration, Dr. Amiri opined that [Plaintiff] could occasionally stoop; frequently kneel, crouch, and crawl; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds. He further noted on reconsideration that the current severity and physical examination findings would not necessitate limiting kneeling/crouching to occasional and that they are reasonable limited to frequent. The medical consultants also opined that [Plaintiff] should avoid all exposure to hazards. I note that the medical consultants are non-treating, non-examining medical sources. Their opinions are based upon a thorough review of the available medical records and a comprehensive understanding of agency rules and regulations. I find the initial opinion by Dr. Jasti generally persuasive as it is supported by explanation. However, the evidence available at the hearing level supports the limitations opined in the opinion my Dr. Amiri. Physical examination shows intact sensation; full strength; and normal gait. (Exhibit 3F/295; 8F/30; 11F/18, 24; 14F/6, 11, 22)[.]

(R. at 25.)

All of the above record evidence constitutes substantial evidence.  Plaintiff, in her limited argument on this point, presents no evidence to the contrary.  Accordingly, there is no merit to this portion of Plaintiff's statement of error addressed to the ALJ's RFC formulation.

### 2. Concentration, Persistence and Pace

Plaintiff also argues that the ALJ's RFC fails to convey her limitations as to concentration, persistence and pace.  Specifically, Plaintiff asserts that the RFC fails to acknowledge that she "may require flexible breaks, redirection, and may be unable to stay alert, or work at a consistent pace, even at a simple, unskilled, routine job. . . ." (ECF No. 17 at 14.) By extension, Plaintiff argues that the hypothetical question to the vocational expert was not adequate.

The determination of a plaintiff's RFC is entirely within the purview of the ALJ, and "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Here, the ALJ found that Plaintiff had a moderate limitation with respect to concentration, persistence, or pace. (R. at 20.)  In his RFC determination, the ALJ specifically noted that Plaintiff could "perform simple tasks with no strict production rate pace requirement and tolerate occasional workplace changes."  (R. at 21.)  Indeed, the ALJ carefully considered the evidence in the record regarding Plaintiff's limitations in concentration, persistence, and pace. To this end, the ALJ set forth the following:

As for the opinion evidence regarding [Plaintiff]'s mental functioning, I have considered the psychiatric review techniques set forth by Todd Finnerty, Psy.D. and Robyn Murry-Hoffman. (Exhibit 1A; 2A; 5A; 6A). Dr. Finnerty and Dr. Murry-Hoffman opined mild to moderate limitation in the paragraph "B" criteria. They further opined that [Plaintiff] can sustain simple tasks without fast pace. [Plaintiff] is not able to perform with demands of precise attainment of set, limits, tolerances or standards. They further opined that [Plaintiff] can adapt to a setting where duties are relatively static and changes are infrequent and can be adjusted to over time. [Plaintiff] can adapt to a setting which does not require frequently shifting through a large variety of duties where they would be asked to frequently go from one task to another without losing efficiency or composure. Dr. Finnerty and Dr. Murry-Hoffman's opinions are based on their assessment of the record evidence reflecting claimant's demonstrated functioning in activities requiring, for example, concentration and interaction with others; their opinion in this regard is consistent with and supported by [Plaintiff]'s self-reported activities of daily living and the symptoms reported in treatment notes. Accordingly, I find this opinion persuasive and have included corresponding limitations in the residual functional capacity.

I have considered the opinion provided by Dr. Tanley the consultative examiner. (Exhibit 6F/6). Dr. Tanley opined that [Plaintiff] had no difficulty with understanding, remembering, and carrying out instructions during the course of the consultative evaluation. He further opined that [Plaintiff] would be expected to show little or no difficulty with tasks of increasing complexity and multistep tasks. However, were her mood problems, anxiety, and attention worsen, they could interfere with her ability to focus and concentrate. Dr. Tanley opined that [Plaintiff]'s current mood problems, anxiety, and/or inattention could make the free and easy commerce of social interaction on the job somewhat problematic. Finally, he opined that [Plaintiff]' mental impairments could lower her frustration tolerance and put her at some degree of risk for the pressures of work. I find this opinion partially persuasive. While Dr. Tanley's opinion is relatively consistent with his findings on examination, I do not find that [Plaintiff] requires social limitations based on her activity described in the treatment notes. [Plaintiff] is noted to attend school events; take her children to the circus; have friends over for holidays; and attend church. (Exhibit 1A; 7F; 15F).

(R. at 25-26.)

Taking this record evidence into account, the ALJ's RFC determination included

limitations addressed to Plaintiff's concentration, persistence and pace.  Plaintiff fails to explain

why the facts here require a more detailed hypothetical question.  *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) (While "[t]here may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks [, plaintiff does not] explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.")  Instead, Plaintiff simply points to evidence in the record that she believes demonstrates her limitations in concentration, persistence, and pace. (ECF No. 17, at 13-14, citing symptoms.)  Beyond this, Plaintiff cites speculative limitations that she believes should have been included in the RFC. *See* ECF No. 17 at 14 ("the ALJ failed to acknowledge that [she] *may* require flexible breaks, redirection and *may* be unable to stay alert, or work at a consistent pace, even at a simple, unskilled, routine job") (emphasis added).  She further speculates that identified jobs could have been excluded "if [she] required repetition of directions" or "only visual demonstrations." (*Id.*)

Here, viewing the decision as a whole, the ALJ properly evaluated the record and provided sufficient explanation based on substantial evidence.  Plaintiff has offered nothing beyond citations to particular symptoms.  Further, to the extent Plaintiff argues that the ALJ failed to explain why he did not include all of the limitations noted by the State agency psychologists, this argument is completely at odds with a fair reading of the ALJ's decision.  (R. at 25-26.)  Moreover, even if Plaintiff's listing of symptoms was sufficient evidence to support a conclusion opposite that reached by the ALJ, it would not be enough here. *Longworth*, 402 F.3d at 595 ("If substantial evidence supports the commissioner's decision, this Court will defer to

that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."). In short, the ALJ made the required connection between the evidence he relied on and the conclusion he reached. Plaintiff fails to demonstrate otherwise. Accordingly, the Undersigned finds no merit to this portion of Plaintiff's second statement of error.

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's

report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:   <u>April 11, 2022</u>                          <u>  /s/ *Elizabeth A. Preston Deavers*</u>
                                                   Elizabeth A. Preston Deavers
                                                   United States Magistrate Judge

24